1 Dan Stormer, Esq. [S.B. #101967]
  E-mail:  dstormer@hadsellstormer.com
2 Cornelia Dai, Esq. [S.B. #207435]
  E-mail:  cdai@hskrr.com
3 Natalie Nardecchia, Esq. [S.B. #246486]
  E-mail:  natalien@hskrr.com
4 HADSELL STORMER KEENY
        RICHARDSON & RENICK, LLP
5 128 N. Fair Oaks Avenue
  Pasadena, California 91103
6 Telephone:  (626) 585-9600
  Facsimile:  (626) 577-7079
7
  Jason L. Oliver, Esq. [S.B. #183062]
8 E-mail:  jason@oliver.net
  LAW OFFICES OF JASON L. OLIVER
9 128 N. Fair Oaks Avenue, Suite 107
  Pasadena, California 91103-3650
10 Office:  (626) 797-2777
  Facsimile:  (626) 797-2477
11
  Attorneys for All Plaintiffs
12

13                UNITED STATES DISTRICT COURT

14         FOR THE NORTHERN DISTRICT OF CALIFORNIA,

15                   SAN FRANCISCO DIVISION

16
   PHILIP E. KAY, JOHN W. DALTON,       Case No.
17 LINDSAY MARCISZ, BLAIR
   POLLASTRINI, and JESSICA             1135
18 POLLASTRINI,
                                        COMPLAINT FOR
19                        Plaintiffs,   DECLARATORY AND
                                        INJUNCTIVE RELIEF
20 v.
                                        I.    VIOLATION OF 42 U.S.C. §
21 STATE BAR OF CALIFORNIA, a                 1983 (PROCEDURAL DUE
   public corporation, and the BOARD          PROCESS)
22 OF GOVERNORS OF THE STATE
   BAR OF CALIFORNIA, collectively;    II.   VIOLATION OF 42 U.S.C. §
23 HOLLY FUJIE, in her official capacity,     1983 (FREE SPEECH)
   LUCY ARMENDARIZ, in her official
24 capacity, SCOTT J. DREXEL,           III.  VIOLATION OF 42 U.S.C. §
   individually and in his official capacity,  1983 (SUBSTANTIVE DUE
25 ALLEN BLUMENTHAL, individually            PROCESS)
   and in his official capacity, JEFF DAL
26 CERRO individually and in his official IV.  VIOLATION OF 42 U.S.C. §
   capacity, and DOES 1 through 50,           1983 (EQUAL PROTECTION)
27 inclusive,
                                        V.    INJUNCTIVE AND
28                        Defendants.          DECLARATORY RELIEF

                                        [IMMEDIATE TEMPORARY
                                        RESTRAINING ORDER REQUESTED]

                                     1
                          COMPLAINT FOR DECL. & INJUNC. RELIEF

## I.  INTRODUCTION AND SUMMARY OF THE ACTION

1.     Plaintiffs comprise two attorneys, PHILIP E. KAY and JOHN W. DALTON ("Plaintiffs Attorneys"), and clients they represent in *Marcisz v. UltraStars Cinemas*, LINDSAY MARCISZ, BLAIR POLLASTRINI, JESSICA POLLASTRINI ("Plaintiffs Clients").  This complaint is brought to challenge actions taken against Plaintiffs Attorneys by the State Bar of California ("State Bar"), which violate Plaintiffs Attorneys' rights afforded by the First, Fifth, and Fourteenth Amendments to the United States Constitution.  The State Bar of California, including Judge Lucy Armendariz of the State Bar Court and the Office of the Chief Trial Counsel ("OCTC"), are unlawfully prosecuting Plaintiffs Attorneys, and their refusal to stay the proceedings to allow Plaintiffs Attorneys to finish litigating Plaintiffs Clients' lawsuit infringes on Plaintiffs Clients' right of petition for redress and access to the courts.

2.     Defendants are pursuing an unprecedented and selective prosecution, against KAY and DALTON, who are nationally recognized and successful civil rights attorneys.  The State Bar defendants have and continue to violate Plaintiffs' free speech, substantive and procedural due process rights afforded under the United States Constitution by, *inter alia*, unfairly prosecuting Plaintiffs Attorneys and depriving them of a fair trial in violation of plaintiffs' due process rights, and attempting to chill Plaintiff Attorneys' constitutionally protected speech and impair their ability to fulfill their legal obligations as zealous advocates to their clients.

3.     Plaintiffs Attorneys seek declaratory and injunctive relief in order to prevent the immediate and irreparable injury, loss, or damage to themselves and their clients, Plaintiffs Lindsay Marcisz, Blair Pollastrini and Jessica Pollastrini ("Plaintiff Clients").

## II.  JURISDICTION AND VENUE

4.     This is an action brought pursuant to the laws of 42 U.S.C. § 1983.  The jurisdiction of this court is predicated upon this statute and 28 U.S.C. § 1331 (federal question jurisdiction).

5.     Venue is proper in this Court because the Northern District is the judicial

COMPLAINT FOR DECL. & INJUNC RELIEF

1    district is in which the claim arose, pursuant to 28 U.S.C. § 1391(b). The proceedings

2    based on the OCTC's Notice of Disciplinary Charges ("NDC") against KAY and

3    DALTON are currently set for trial in San Francisco, to commence on March 16, 2009.

### III.  PARTIES

5    6.    Plaintiff PHILIP E. KAY is, and at all times mentioned herein was, a citizen

6    and resident of the State of California. He is licensed to practice law in the State of

7    California and has been an active member of the State Bar of California since 1981. He

8    has no disciplinary record with the State Bar.

9    7.    Plaintiff JOHN W. DALTON is, and at all times mentioned herein was, a

10   citizen and resident of the State of California. He is licensed to practice law in the State

11   of California and has been an active member of the State Bar of California since 1996.

12   He has no disciplinary record with the State Bar.

13   8.    LINDSAY MARCISZ, BLAIR POLLASTRINI, JESSICA POLLASTRINI

14   ("Plaintiff Clients"), are the clients of KAY and DALTON in the San Diego Superior

15   Court case entitled *Marcisz, et al, v. Ultrastar Cinemas*, Case Number GIC 820896.

16   This case is ongoing as the retrial of the amount of punitive damages is expected to take

17   place within the next several months.

18   9.    Defendant STATE BAR OF CALIFORNIA is a public corporation in the

19   judicial branch of the State of California, incorporated under the laws of the State of

20   California with its principal place of business in the State of California. The State Bar

21   acts through THE BOARD OF GOVERNORS OF THE STATE BAR OF

22   CALIFORNIA, which makes rules and regulates and operates the State Bar. Defendant

23   HOLLY FUJIE is the current State Bar president, a member of the Board of Governors,

24   and the State Bar's chief officer. Ms. Fujie is being sued in her official capacity.

25   10.   The State Bar Court is the adjudicative tribunal acting as an administrative

26   arm of the California Supreme Court to hear and decide attorney disciplinary and

27   regulatory proceedings and to make recommendations to the Supreme Court regarding

28   those matters. Judge LUCY ARMENDARIZ is the State Bar Court judge assigned to

COMPLAINT FOR DECL. & INJUNC RELIEF

1  preside over the trial of the disciplinary proceedings brought against Plaintiffs KAY and

2  DALTON.  Judge Armendariz is being sued in her official capacity.

3       11.    Defendant SCOTT J. DREXEL is Chief Trial Counsel of the Office of the

4  Chief Trial Counsel, the office within the State Bar which is the prosecutorial arm of the

5  State Bar in attorney discipline and regulatory matters.  The Office of the Chief Trial

6  Counsel functions under the direction of the Chief Trial Counsel.  Defendants ALLEN

7  BLUMENTHAL, and JEFF DAL CERRO are Deputy Trial Counsel of the Office of

8  Chief Trial Counsel.  Messieurs Drexel, Blumenthal, and Dal Cerro are being sued in

9  their individual and official capacities.

10       12.    The true names and capacities of DEFENDANTS named herein as DOES I

11  through 50, inclusive, whether individual, corporate, associate, or otherwise, are

12  unknown to Plaintiffs, who therefore sue such defendants by such fictitious names.

13  Plaintiffs will amend this Complaint to show true names and capacities when they have

14  been determined.

15          **IV.  ALLEGATIONS COMMON TO ALL CLAIMS FOR RELIEF**

16       13.    Plaintiff KAY and DALTON are successful civil rights attorneys who

17  represent the rights of discrimination and harassment victims and whistleblowers before

18  the superior and appellate courts of the State of California and United States District

19  Courts.  Plaintiff Attorneys, on behalf of their clients, frequently take positions in

20  courtroom advocacy that are not consistent with those espoused by corporate defense

21  attorneys or their clients, all of whom have clear financial and ideological interests

22  adverse to the claims of Plaintiffs.

23       14.    Plaintiff KAY is a solo practitioner who has spent the majority of his career

24  fighting to advance the rights of women and minorities in the workplace, acting as lead

25  counsel in numerous civil rights trials which has resulted in the largest non-class action

26  sex harassment verdicts in the United States and four of the largest sex harassment

27  verdicts in California, including the landmark case of *Weeks v. Baker & McKenzie.*

28  KAY has been acknowledged by numerous trial judges for his outstanding advocacy in

1    orders awarding him attorneys' fees at the upper hourly rate for attorneys with a similar
2    level of experience.

3        15.     For the 27 years KAY has been litigating cases, he has never been cited for
4    contempt or fined for engaging in attorney misconduct by any court; nor has he
5    previously been the subject of any State Bar complaint by a judge.

6        16.     DALTON, also a solo practitioner, has devoted his practice to helping
7    victims of workplace harassment and discrimination.  He has also been compensated at
8    the upper hourly rate for attorneys with a similar level of experience in fee awards for his
9    successful work in harassment and discrimination trials, including by Judge Stern in the
10   *Gober v. Ralphs Grocery Co.* case.

11        17.     Plaintiff DALTON has never been cited for contempt or fined to have
12   engaged in attorney misconduct by any court; nor has he previously been the subject of
13   any State Bar complaint by a judge.

14   **A.     THE STATE BAR'S NOTICE OF DISCIPLINARY CHARGES**

15        18.     On June 11, 2008, the State Bar of California, Office of the Chief Trial
16   Counsel ("OCTC"), led by DREXEL, DAL CERRO, and BLUMENTHAL, issued a
17   Notice of Disciplinary Charges ("NDC") against Plaintiffs KAY and DALTON.  The
18   charges, which consist of four counts with subparts, relate to three lawsuits litigated by
19   KAY and DALTON.  Specifically, Counts One, Three, and Four of the NDC allege
20   violations of the California Business and Professions Code and the Rules of Professional
21   Conduct against KAY and DALTON for allegedly improper conduct during trial in
22   *Gober v. Ralphs* and *Marcisz v. UltraStar*, and Count Two alleges violations of the
23   Business and Professions Code and the Rules of Professional Conduct against KAY for
24   allegedly improper conduct with respect to the division of attorneys' fees after a
25   successful result in *Weeks v. Baker & McKenzie*.

26        19.     None of the charges or allegations in the NDC were initiated by any former
27   or current clients of Plaintiff Attorneys.  No harm has been caused to any client, party or
28   institution in any of the cases that are the subject of the NDC.

COMPLAINT FOR DECL. & INJUNG RELIEF

1    20.    The charges seek to disbar Plaintiff KAY for the practice of law and to

2    suspend Plaintiff DALTON for sixth months to up to two years.

3    21.    Such a result will have a devastating effect on Plaintiff KAY resulting in his

4    expulsion from the highly successful practice he has had for the past 27 years.  It will

5    also injure his present clients and remove from the practice of law one of the most

6    successful practitioners ever who have focused on representing women who have been

7    discriminated against.

8    22.    Similarly, it will injure Plaintiff DALTON both financially and in his

9    reputation.

10    **(1)    Counts 1 & 4: *Gober v. Ralphs Grocery Co.***

11    23.    Count 1 includes allegations against KAY and/or DALTON for, *inter alia*,

12    moral turpitude, dishonesty or corruption [Cal. Bus. & Profs Code § 6106], and

13    harassing or embarrassing a discharged juror [Cal. Rule Prof. Conduct, rule 5-320(D)].

14    Count 4 is a duplicative allegation of moral turpitude against KAY, based in part on

15    alleged misconduct during *Gober*.

16    24.    In 1996, plaintiffs Dianne Gober, Terrill L. Finton, Sarah Lang, Talma

17    (Peggy) Noland, Suzanne Papiro and Tina Swann (collectively, the *Gober* plaintiffs)

18    sued their employer, Ralphs Grocery Company (Ralphs), for sexual harassment.  The

19    case was tried before San Diego County Superior Court Judge Joan P. Weber in 1998.

20    The jury held Ralphs liable to the plaintiffs for compensatory and punitive damages in

21    the amount of approximately $3.85 million dollars.

22    25.    Ralphs moved for new trial alleging, *inter alia*, juror misconduct and

23    attorney misconduct (i.e., "irregularity in the proceedings" under Code of Civil

24    Procedure section 657(1)).  Judge Weber granted a partial new trial based as to punitive

25    damages only, based exclusively on jury misconduct (i.e., a juror's bringing information

26    into the deliberations regarding the net worth of defendant).  In denying the motion on

27    issues unrelated to punitive damages, Judge Weber rejected Ralphs' allegations, many of

28    which are virtually identical to those now being advanced in the NDC.

COMPLAINT FOR DECL. & INJUNC RELIEF

1    26.    On appeal, the Court of Appeal affirmed liability for sexual harassment and

2    punitive damages, as well as the amount of the compensatory awards, and remanded the

3    matter for retrial as to the amount of punitive damages only.  In its opinion, the Court of

4    Appeal neither commented on nor made any findings concerning the conduct of Plaintiff

5    Attorneys, despite the appellate record containing the defendant's motions making

6    numerous claims of attorney misconduct by Plaintiffs Attorneys.

7    27.    Before the amount of punitive damages issue was retried, Judge Weber

8    disqualified herself based on a conflict.  Judge Michael M. Anello was assigned to handle

9    the retrial.

10    28.    After a nearly two-month retrial, the jury rendered a verdict awarding each

11    plaintiff $5 million in punitive damages – a total of $30,000,000.  Ralphs again moved

12    for new trial alleging, *inter alia*, excessive damages (i.e., "excessive damages" under

13    Code of Civil Procedure section 657(5) and attorney misconduct (i.e., "irregularity in the

14    proceedings" under Code of Civil Procedure section 657(1)).  Judge Anello ruled that

15    unless plaintiffs agreed to a reduction of their individual punitive damages awards to a

16    small fraction of what was awarded by the jury, he would grant a partial new trial as to

17    the amount of punitive damages only.  Plaintiffs did not agree to the reduction, and thus

18    the Order automatically triggered a partial new trial based on excessive damages

19    pursuant to Code of Civil Procedure section 657(5).  In basing the Order on "excessive

20    damages" and denying it as to "all other grounds," Judge Anello necessarily rejected

21    Ralphs's allegations of "attorney misconduct."  After the granting of the new trial,

22    several of the jurors spoke publicly about their dismay with Judge Anello because of his

23    granting of a new trial for punitive damages.  Judge Anello then sought the "help" of the

24    State Bar prosecutors to help him "reclaim his reputation publicly."  The State Bar

25    prosecutors' efforts to provide the requested assistance to Judge Anello is admitted in an

26    October 2003 email from State Bar prosecutor Alan Konig to State Bar prosecutor DAL

27    CERRO.

28    29.    On appeal, the Court of Appeal granted the relief sought by the *Gober*

7

COMPLAINT FOR DECL. & INJUNG RELIEF

1   plaintiffs – a retrial on the amount of punitive damages before a new judge who was

2   pre-instructed by the Court of Appeal to properly consider all relevant evidence without

3   regard to the rulings in prior trials.  In its opinion, the Court of Appeal neither

4   commented on nor made any findings concerning the conduct of Plaintiff Attorneys.  In

5   addition, the Court of Appeal granted plaintiffs' motion to disqualify Judge Anello "in

6   the interests of justice" pursuant to Code of Civil Procedure section 170.1(c).  The case

7   was reassigned to Judge Jacqueline M. Stern.

8       30.   Ralphs petitioned for review based on a newly-decided California Supreme

9   Court case concerning punitive damages, *Simon v. Sao Paolo Holding Co., Inc.* (2005)

10  35 Cal.4th 1159 (2005).  Review was granted and the California Supreme Court ordered

11  remand with instructions for the Court of Appeal to review its opinion "in light of

12  *Simon*."  On March 1, 2006, the Court of Appeal issued a new opinion in which it held

13  that the amount of punitive damages recoverable by plaintiffs based on the facts of the

14  case was limited to a 6 to1 ratio of compensatory damages to punitive damages, and that

15  the matter could be decided by appellate determination without retrial.  In its opinion, the

16  Court of Appeal neither commented on nor made any findings concerning the conduct of

17  Plaintiff Attorneys.  This resulted in a total Judgement for the *Gober* plaintiffs in a total

18  amount exceeding $7 million.

19      31.   After the trial court entered judgment as directed, Plaintiff Attorneys filed a

20  motion for attorneys' fees.  Finding that Plaintiffs Attorneys' reputation, experience, and

21  ability warranted the highest hourly rate possible, Judge Stern awarded the Plaintiffs

22  Attorneys their requested hourly lodestar, resulting in a total award of attorneys' fees and

23  costs in excess of $8 million.

24      32.   The facts underlying the allegation in the NDC concerning harassment or

25  embarrassment of a discharged juror are that, after the jury was discharged from two of

26  the subject trials, Plaintiff Attorneys communicated in writing with the discharged jurors.

27  The purpose of this communication with the discharged jurors was to explore and

28  discuss the potential impact upon the jurors of certain evidence that had been precluded

1    from the juries consideration during trial and to solicit the jurors' opinion regarding

2    whether that evidence would have affected their decisions.  Judge Anello had attempted

3    to order plaintiff attorneys not to discuss this evidence with the jurors after their

4    discharge.

5          (2)    **Count 2: *Weeks v. Baker & McKenzie* and *Chambers v. Kay***

6          33.    Count 2 consists of allegations against KAY for dividing a fee without the

7    client's written consent [Cal. Rule Prof. Conduct, rule 2-200].

8          34.    *Weeks v. Baker & McKenzie*, a case filed in 1992, involved claims of sexual

9    harassment brought by plaintiffs Rena Weeks and Mary Rossman, represented by KAY,

10   against their employer, Baker & McKenzie, and attorney Martin Greenstein.  KAY

11   brought in attorney Arthur Chambers to assist with the case; however, Arthur Chambers'

12   legal services were terminated by the plaintiffs upon discovery of malfeasance on his

13   part.  Alan Exelrod was retained in place of Mr. Chambers.  The *Weeks* case eventually

14   went to trial and a multi-million dollar verdict was obtained as to Ms. Weeks and a

15   settlement reached as to the Ms. Rossman.

16         35.    Mr. Chambers brought suit against KAY and sought to recover a

17   contingency percentage payment for the minimal work he performed, without having

18   obtained written consent from the clients as required by Rules of Professional Conduct,

19   rule 2-200, which the California Supreme Court, in *Chambers v. Kay* (2002) 29 Cal.4th

20   142, determined was his obligation.  The *Chambers* Court further held that KAY did not

21   violate Rule 2-200 because there was no sharing of a contingency fee.  Since there was

22   no violation of Rule 2-200, there also could not be a violation of rule 1-120 ("a member

23   shall not knowingly assist in, solicit, or induce any violation of these rules or the State

24   Bar Act), which is also alleged against KAY in the NDC.

25         (3)    **Counts 3 & 4: *Marcisz, et al., v. UltraStar Cinemas***

26         36.    Count 3 includes allegations against KAY and/or DALTON for, *inter alia*,

27   moral turpitude, dishonesty or corruption [Cal. Bus. & Profs Code § 6106].  Count 4 is a

28   duplicative allegation of moral turpitude against KAY, based in part on alleged

9

1  misconduct during *Marcisz*.

2      37.    In 2003, Plaintiff Clients filed suit against UltraStar Cinemas based on the

3  sex harassment they were subjected to while they were teenagers working as ushers,

4  concessionaires, ticket takers, and box office attendants at an UltraStar theater.  The

5  harassers, their supervisors, subjected them and other young women to conduct which

6  included stalking, assaults, batteries, threats while brandishing and holding knives,

7  offensive sex based comments, jokes, and innuendo, and pornographic photos.

8      38.    The eight-week trial resulted in a verdict of $850,000 in compensatory

9  damages and $6 million in punitive damages.  As with the *Gober* case, UltraStar moved

10  for a new trial on various grounds, including "attorney misconduct" (i.e., "irregularity in

11  the proceedings" under Code of Civil Procedure section 657(1)) and "excessive

12  damages" under Code of Civil Procedure section 657(5).  Judge John S. Meyer granted a

13  partial new trial as to the amount of compensatory and punitive damages on the sole

14  basis of "excessive damages" under Code of Civil Procedure section 657(5).  At the

15  hearing on UltraStar's motion, Judge Meyer expressly rejected attorney misconduct as a

16  basis for the court's ruling:

17      Counsel for UltraStar:

18      ". . . this court has not ruled on or has not based its ruling for new trial specifically

19  only on attorney misconduct .. . MTEG while it agrees strongly with the court's

20  conclusions regarding the excessiveness of damages, also would urge that the other

21  alternative basis for new trial contained in its motion are meritorious."

22      Judge Meyer:

23          "I've thought about that, and I respectfully disagree."

24      Then again, later in the proceeding:

25      Mr. Kay:

26      . . . Ms. Houlahan misspoke, she said that you granted the motion based on

27  attorney misconduct, it isn't, it was granted -

28      THE COURT:

1         "No, I don't think she said that and if she did, she did misspeak."

2       39.    On appeal, the Court of Appeal reinstated the amount in compensatory

3 damages awarded by the jury and remanded the case for retrial regarding on the amount

4 of punitive damages only.  Relying on the trial court's reasoning, the Court of Appeal

5 likewise rejected UltraStar's allegations of attorney misconduct as a basis for a new trial:

6         In its motion UltraStar argued, among other things, that the misconduct of

7         Plaintiffs'  counsel necessitated a new trial, but the trial court rejected this

8         argument by not granting  a new trial on this ground and it noted at oral

9         argument that this, and the other grounds argued by UltraStar as a basis for

10         a new trial, <u>were not meritorious</u>. . . .

11 (Emphasis added.)

12       40.    On remand for retrial of the amount of punitive damages, Judge Meyer was

13 disqualified pursuant to Code of Civil Procedure section 170.6.

14       41.    The retrial of the amount of punitive damages is expected to take place

15 within the next several months.

16       42.    Despite the filing of proper applications by Plaintiff Attorneys to the State

17 Bar Court for a stay and abatement of the State Bar proceedings against Plaintiff

18 Attorneys to allow them to represent Plaintiff Clients in the retrial, the State Court has

19 refused the request.  As a result of the fact that Plaintiffs will be engaged in the defense

20 of the State Bar trial, they are likely to be impaired in their ability to adequately represent

21 Plaintiff Clients and may be precluded altogether from representing their clients in the

22 retrial.

23 **B.**     **THE STATE BAR'S SELECTIVE PROSECUTION OF KAY AND**

24        **DALTON**

25       43.    Plaintiff KAY had filed a complaint of misconduct against defense counsel

26 in the *Gober* and *Marcisz* cases, alleging attorney misconduct during the trials.  He also

27 filed a complaint against Chambers in the *Weeks* matter.  Following the Pretrial

28 Conference in the State Bar proceedings, Plaintiff Attorneys on March 2, 2009, received

COMPLAINT FOR DECL. & INJUNC RELIEF

1    a letter from Erin McKeown Joyce of the State Bar OCTC Intake regarding KAY's

2    complaints against defense counsel in the *Gober* and *Marcisz* trials and attorney Arthur

3    Chambers.  The letter, dated February 26, 2009, states in part:

4         . . . (I)n reviewing the transcripts and information you did provide, <u>it is clear</u>

5         <u>that the trial courts in both cases did not make any finding that any of the</u>

6         <u>attorneys intentionally violated the courts' in limine orders warranting</u>

7         <u>censure by the court or discipline by the State Bar. The trial courts did not</u>

8         <u>make any findings against any of the attorneys sufficient to warrant a State</u>

9         <u>Bar Investigation</u>.

10    (Emphasis added.)

11         Ms. Joyce went further and stated:

12         <u>The trial courts are in the best position to determine if an attorney has</u>

13         <u>committed a violation</u> of Business and Professions Code section 6103, or if

14         an attorney has provided false testimony in violation of Business and

15         Professions Code section 6068(d). <u>There appears to be no basis for the State</u>

16         <u>Bar to investigate your allegations absent such findings by the courts in</u>

17         <u>question</u>.  (Emphasis added.)

18         Finally, Ms. Joyce noted:

19         As for your complaint against Mr. Chambers, it is barred by the statute of

20         limitations. . ."

21    (Emphases added.)  Thus, OCTC has admitted that there is no legal basis to open an

22    investigation against any attorneys, even for the very same allegations of misconduct for

23    which OCTC is now prosecuting Plaintiff Attorneys.  Further, as stated in the letter from

24    Ms. Joyce as quoted above, the allegations concerning the *Weeks* matter were "barred by

25    the statute of limitations."

26    / / /

27    / / /

28    **C.**   **CONCEALED EXCULPATORY EVIDENCE AND PROSECUTORIAL**

12

COMPLAINT FOR DECL. & INJUNC RELIEF

1   **MISCONDUCT REVEALED IN RECORD FROM *KONIG v. DAL CERRO***

2       44.    One of the original State Bar prosecutors involved in the KAY/DALTON

3   prosecutions, Alan Konig, was terminated for his employment with the State Bar.

4   Prosecutor Konig subsequently filed a federal action against the State Bar for retaliation

5   and constructive wrongful termination, in which he alleged that his complaints of

6   judicial misconduct against the State Bar Court were some of the motivating factors for

7   the retaliation he allegedly suffered.  (*Konig v. Dal Cerro, et al,* Case No. C-04-221 0

8   MJJ, and related 9th  Circuit-hereafter referred to as the "*Konig* case" or the"*Konig*

9   action."

10      **(1)    Concealed Evidence that Five-Years Limitations Period Bars**

11              **Charges in Count 1**

12      45.    According to rule 2401 of the Rules of Procedure of the State Bar of

13  California ("State Bar Rules"), the State Bar may open an inquiry or investigation in two

14  circumstances, "on its own accord or upon receipt of a communication concerning the

15  conduct of a member of the State Bar."

16      46.    State Bar Rules of Procedure, rule 51 (a), provides a five-year limitations

17  period from the date of the alleged violation for the initiation of disciplinary

18  proceedings.  However, rule 51(e) allows OCTC to avoid the five-year limitations period

19  when disciplinary proceeding are initiated based on information received from a source

20  independent of a time-barred complainant.

21      47.    In the proceedings against KAY and DALTON, OCTC submitted

22  declarations that state that Judge Anello was *not* the "complainant" who initiated the

23  investigation as defined by rules 2.26 and 2.28 of the State Bar Rules of Procedure.

24      48.    However, in their defense of the Konig federal action, the OCTC defendants

25  submitted declarations and documents to the U.S. District Court establishing that Judge

26  Anello was the "complaining witness" in the State Bar proceedings.

27      49.    Thus, under Rule 51 (a), the proceedings are time barred and should not

28  have been brought.

13

COMPLAINT FOR DECL. & INJUNC RELIEF

1      **(2)**      **Concealed Evidence That OCTC Improperly Brought Charges**

2                **Against Plaintiffs Attorneys and Engaged in *Ex Parte***

3                **Communications with State Bar Judges**

4       50.      Plaintiff KAY moved to unseal the records in the *Konig* action and obtained

5   a number of relevant declarations and memoranda.

6       51.      In defense of the *Konig* case, the State Bar had retained Charlotte

7   Addington to investigate Konig's many complaints against OCTC prosecutors and the

8   State Bar Court judges.  Among the matters discussed in the Addington report are

9   findings that *ex parte* communications occurred between the State Bar Court and the

10  OCTC.  The report found that such improper communications exist, stating at page 47:

11        (OCTC prosecutor) Mr. Dal Cerro occasionally has informal meetings with

12        the State Bar Court judges to discuss matters relating to procedure and

13        practice.  At one such meeting, the judges spoke about the tendency of the

14        OCTC to overcharge when preparing the initial NDC, which often causes

15        problems later in the case.

16       52.      OCTC's "overcharging" in the NDC is one of many complaints Plaintiff

17   Attorneys have about OCTC's handling of the State Bar proceedings.  The Addington

18   report refers to the "judges" who met with DAL CERRO in informal *ex parte* meetings.

19   DAL CERRO is the Assistant Chief Trial Counsel assigned to Plaintiff Attorneys' State

20   Bar proceedings.

21       53.      Plaintiff Attorneys had requested in the State Bar proceedings that all *ex*

22   *parte* communications be disclosed.  Defendants refused to provide such information.

23   On information and belief, "judges" referred to in the Addington report are most likely,

24   and at a minimum, Judges Remke and McElroy.  On information and belief, Judges

25   Remke and McElroy were the Hearing Department judges at the relevant time the

26   investigation was done.

27       54.      At no time did the State Bar Court judges disclose to Plaintiffs Attorneys

28   that they had provided OCTC with legal advice regarding OCTC's tendency to

COMPLAINT FOR DECL. & INJUNC. RELIEF

1   overcharge.  At no time did the State Bar Court disclose to Plaintiff Attorneys that it had

2   held such ex parte meetings with OCTC prosecutors in the past or even whether such

3   meetings continue to this day.  OCTC has provided no such disclosure either.  Moreover,

4   the investigative report by Addison was also not provided to Plaintiffs Attorneys.

5                    **(3)    Concealed Evidence of Bias of State Bar Judges**

6          55.    The Addison report further states that State Judges Remke and McElroy

7   have personal knowledge and pre-existing opinions as to the credibility of certain

8   witnesses, including Konig, and/or other matters relevant to the disciplinary proceedings

9   against KAY and DALTON.  The report discusses at page 5 another of Judge Remke's ex

10  parte communications with OCTC Chief Trial Counsel DREXEL and/or DAL

11  CERRO regarding Mr. Konig.  Additionally, at pages 50-53, the Addington report

12  contains "interviews" with Judges Remke and McElroy and makes favorable findings

13  regarding their judicial conduct, which arose from the accusations made by Konig

14  against the State Bar Court, culminating in the Addington investigation report.

15  **D.    CONTINUED IMPROPER HANDLING OF PROCEEDINGS BY STATE**

16       **BAR AND OCTC**

17                    **(1)    Biased Judge Rules on Disqualification of State Bar Judges**

18         56.    Plaintiff Attorneys moved to disqualify State Bar Judges Remke and

19  McElroy under State Bar Rule of Procedure rule 106(a), which follows the

20  disqualification standard provided in  Code of Civil Procedure section 170.1.

21         57.    Plaintiff Attorneys filed motions and verified statements of disqualification

22  regarding State Bar Court Judges Joann Remke, Patrice McElroy, and Lucy

23  ARMENDARIZ.  According to the State Bar website, Judge Remke is the Presiding

24  Judge for the State Bar Court and Judge McElroy is the Supervising Judge for the State

25  Bar Court. Judge ARMENDARIZ is the judge assigned to Plaintiff Attorneys' State Bar

26  trial.  The basis of the motions for disqualification was the discovery of improper *ex*

27  *parte* communications between the State Bar Court and OCTC as revealed from the

28  record in the *Konig* case.

COMPLAINT FOR DECL. & INJUNC RELIEF

1    58.    State Bar Judge Richard Platel had worked as an attorney for OCTC while

2    the State Bar proceedings against Plaintiff Attorneys were pending.  Without disclosing

3    the relevant facts related to his work for OCTC during this time, State Bar Judge Richard

4    Platel accepted jurisdiction over the disqualification motions and summarily denied

5    them.

6             (2)      **The State Bar Refused to Investigation the Conduct of OCTC**

7                      **Chief Trial Counsel Scott Drexel and Allows Him to Control the**

8                      **Prosecution of Kay and Dalton**

9    59.    When KAY was advised of the allegations against him, he showed OCTC

10   prosecutor BLUMENTHAL evidence which directly refuted many of the allegations.

11   On information and belief, BLUMENTHAL provided the evidence to Chief Trial

12   Counsel DREXEL.  Even though he knew many of the allegations were false, DREXEL

13   proceeded to issue the NDC against Plaintiff Attorneys.  KAY then filed a complaint for

14   prosecutorial misconduct against, among others, Chief Trial Counsel DREXEL.  When

15   "[t]he inquiry involves the Chief Trial Counsel," rule 2201(i)(1) of the State Bar Rules of

16   Procedure requires the appointment and immediate investigation of the charges by a

17   Special Deputy Trial Counsel.  Yet, in violation of the rule, the State Bar did not order an

18   immediate investigation by a Special Deputy Trial; instead, it allowed DREXEL to

19   continue to supervise and control the prosecution of KAY and DALTON.  Further, as

20   stated in a letter from Robert Hawley on behalf of the State Bar to KAY, the State Bar

21   intends to improperly base its determinations concerning DREXEL's conduct on the

22   outcome of the prosecution of KAY and DALTON:

23            Please note that because aspects of your complaint may well be addressed in your

24            pending disciplinary proceeding now scheduled for trial in March of 2009, the

25            review undertaken here will await the outcome of the trial and any appeals

26            thereafter before reaching any final conclusions.

27            **(3)      Constitutional Issues Are Disfavored in State Bar Proceedings**

28   60.    In addition, Supervising Judge McElroy admitted to KAY and DALTON

1   that she did not like to consider Constitutional issues raised in State Bar proceedings.

2   Specifically, she stated during a settlement conference in the State Bar proceedings

3   brought against KAY and DALTON that she did not like to see "Amendments" referred

4   to in briefs because she did not like it when attorneys raised constitutional issues.

### (4)   Improper Involvement of Disqualified State Court Judges in State Bar Proceedings Against Kay and Dalton

7       61.     The State Bar/OCTC defendants have intricately involved state court Judges

8   Anello, Weber and Meyer in the disciplinary proceedings against KAY and DALTON,

9   all of whom were disqualified in the two state court lawsuits addressed in the charges.

10  For instance, in his March 6, 2009 email, Judge Anello seeks to have OCTC provide him

11  with legal advice, while stating his concerns of being exposed to cross-examination and

12  his intent not comply with Plaintiff Attorneys' subpoena duces tecum:

> As discussed today with Jim Hyland (sp?), enclosed is a copy of the
> subpoena served on me at court yesterday.  I expect my communications
> with the State Bar and your office may be relevant, so I intend to bring
> copies of those documents with me. <u>Subject to your advice to the contrary,
> my communications with other judges don't appear to be relevant here, so I
> don't intend to bring anything with regard to those requests</u>.  My concern
> there is that Mr. Kay is simply trying to drum something up to use in his
> ongoing complaints to the Commission on Judicial Performance regarding
> my alleged "judicial misconduct. I hope we'll be able to limit Mr. Kay's
> evidence and questioning to relevant matters."

(Emphasis added.)

24      62.     OCTC has indicated that it is seeking to prove the NDC allegations against

25  Plaintiff Attorneys through testimony of the disqualified state court judges, Anello,

26  Weber, and Meyer.

27  / / /

28  / / /

COMPLAINT FOR DECL. & INJUNC. RELIEF

1             **(5)**     **Plaintiffs Attorneys Are Subjected to Ongoing Denial of Basic**

2                           **Rights in the State Bar Proceedings**

3         63.     The State Bar continues to deny KAY and DALTON their basis rights in the

4    State Bar proceedings, including, *inter alia*, by refusing their request for a court reporter

5    to contemporaneously transcribe the hearing proceedings as permitted under Business

6    and Professions Code section 6801.1.

7    **E.**     **PLAINTIFFS KAY AND DALTON WILL NOT RECEIVE A FAIR TRIAL**

8           **SUBJECT TO MEANINGFUL REVIEW**

9         64.     According to a former State Bar prosecutor who now serves as an expert on

10   professional responsibility in federal and state courts, since the institution of

11   "professional judges" within the State Bar Court, petitions for review by respondent

12   attorneys to the California Supreme Court regarding matters decided in the Hearing and

13   Review Departments are nearly always denied, and, in the rare case in which review is

14   granted, it is almost always the case that the Supreme Court has largely deferred to the

15   State Bar Court's decision or resulted in increasing the negative result on the respondent

16   since the establishment of the State Bar's professional court, respondent attorneys'

17   petitions for review State Bar matters are rarely reviewed by the California Supreme

18   Court, in which a respondent attorney was granted affirmative relief that improved his

19   situation.

20        65.     Further, the California Supreme Court deals with the disciplinary system as

21   though the Court and the State Bar prosecutor's office are operating some kind of joint

22   venture, including ex-parte communications regarding matters which significantly affect

23   accused attorneys.

24        66.     Thus, the possibility of obtaining a meaningful review by the California

25   Supreme Court is primarily theoretical, and it would be a mistake for a respondent to

26   place any reliance upon the belief that he will receive a thoughtful or objective review in

27   that Court.  This conclusion, that "opportunity" for review is largely illusory, is

28   supported by California Supreme Court Justice Janice Brown's dissent in the case of *In*

COMPLAINT FOR DECL. & INJUNG RELIEF

1 | *re Rose*, 22 Cal.4th 430, 466-470, 466-470 (2000).

2 |     67.    Many of the negative consequences "antithetical to the constitutional

3 | design" discussed in Justice Brown's dissent, have come to pass under the current

4 | disciplinary system, in which attorneys are, among other things, being denied their right

5 | to genuine and impartial judicial review, potentially with far-reaching and deleterious

6 | consequences on an attorney's right to pursue a livelihood.

7 |     68.    Moreover, the State Bar prosecutor's office is generally far more inclined to

8 | prosecute charges against solo or small firm practitioners than it is large films

9 | representing corporate interests at least in part because the Bar appears to accord greater

10 | credibility to the explanations and assertions of attorneys from large firms.

11 | **V.  CAUSES OF ACTION**

12 | **FIRST CAUSE OF THE ACTION**

13 | **VIOLATION OF 42 U.S.C. §1983 (PROCEDURAL DUE PROCESS)**

14 | **(Plaintiffs Kay and Dalton Against All Defendants, Including Fujie, Armendariz,**

15 | **Drexel, Blumenthal, and Dal Cerro, in Their Individual and Official Capacities)**

16 |     69.    The allegations set forth in foregoing paragraphs of this Complaint are

17 | realleged and incorporated by reference as if fully set forth herein.

18 |     70.    In perpetrating the above described acts and omissions, defendant STATE

19 | BAR OF CALIFORNIA was, at all relevant times herein, a governmental agency of the

20 | State of California, and defendants ARMENDARIZ, DREXEL, BLUMENTHAL, and

21 | DAL CERRO were, at all relevant times herein, its agents/employees.  Thus, defendants'

22 | above-described acts and omissions constitute cognizable state action under color of

23 | state law.

24 |     71.    In perpetrating the above-described acts and failures to act, the defendants,

25 | and each of them, engaged in a pattern, practice, policy, tradition and/or custom of

26 | depriving Plaintiffs KAY and DALTON of their right to adequate notice and a fair trial

27 | in violation of the Fourteenth Amendment to the United States Constitution.  Because

28 | rights under the federal Constitution are federally protected, defendants also violated

COMPLAINT FOR DECL. & INJUNC. RELIEF

1 | Plaintiffs' rights under 42 U.S.C. § 1983.

2 |     72.    At all relevant times herein, there existed within the State Bar of California

3 | as promulgated by the BOARD OF GOVERNORS OF THE STATE BAR OF

4 | CALIFORNIA, a pattern, policy, practice, tradition, custom, and usage of conduct of

5 | depriving Plaintiffs KAY and DALTON of their right to adequate notice and a fair trial

6 | in violation of the Fourteenth Amendment to the United States Constitution, which

7 | resulted in deliberate indifference to Plaintiffs' procedural due process rights.

8 |     73.    The acts set forth herein constitute a policy, practice, or custom of ordering,

9 | ignoring, encouraging, causing, tolerating, sanctioning, and/or acquiescing in the

10 | violation by STATE BAR personnel of the constitutional right of Plaintiffs to adequate

11 | notice and a fair trial.

12 |     74.    The acts and failures to act as alleged herein also result from a custom,

13 | practice or policy of inadequate training in a deliberate indifference to their right to

14 | adequate notice and a fair trial, and the injuries suffered by Plaintiff KAY and DALTON

15 | as alleged herein were caused by such inadequate training.

16 |     75.    Defendants, and each of them, exhibited deliberate indifference to the

17 | violation of Plaintiffs' protected procedural due process rights by failing to investigate

18 | their complaints.

19 |     76.    Defendant FUJIE and Does 1-50 are policymakers for defendant STATE

20 | BAR.  The acts and failures to act as alleged herein were done pursuant to policies and

21 | practices instituted by these defendants pursuant to their authority as policymakers for

22 | the City.

23 |     77.    As a result of the acts and failures to act as alleged herein, and as a result of

24 | the STATE BAR's customs, traditions, usages, patterns, practices, and policies, Plaintiffs

25 | were deprived of their constitutional rights to due process, and suffered damages caused

26 | thereby as more particularly alleged above.

27 |     78.    Unless and until defendants' unlawful policies and practices as alleged

28 | herein are enjoined and restrained by order of this Court, defendants will continue to

COMPLAINT FOR DECL. & INJUNC RELIEF

1  cause great and irreparable injury to Plaintiffs.

2  <center>**SECOND CAUSE OF THE ACTION**</center>

3  <center>**VIOLATION OF 42 U.S.C. §1983 (FREE SPEECH)**</center>

4  <center>**(Plaintiffs Kay and Dalton Against All Defendants, Including Fujie, Drexel,**</center>

5  <center>**Blumenthal, and Dal Cerro, in Their Individual and Official Capacities)**</center>

6       79.    The allegations set forth in foregoing paragraphs of this Complaint are

7  realleged and incorporated by reference as if fully set forth herein.

8       80.    In perpetrating the above described acts and omissions, defendant STATE

9  BAR OF CALIFORNIA was, at all relevant times herein, a governmental agency of the

10  State of California, and defendants ARMENDARIZ, DREXEL, BLUMENTHAL, and

11  DAL CERRO were, at all relevant times herein, its agents/employees.  Thus, defendants'

12  above-described acts and omissions constitute cognizable state action under color of

13  state law.

14       81.    In perpetrating the above-described acts and failures to act, the defendants,

15  and each of them, engaged in a pattern, practice, policy, tradition and/or custom of

16  restraining and enacting impermissible prior restraints on Plaintiffs' free speech on

17  matters of public concern in violation of the First Amendment to the United States

18  Constitution and the California Constitution.  Because rights under the federal and state

19  Constitutions are federally protected, defendants also violated Plaintiffs' rights under 42

20  U.S.C. § 1983.

21       82.    At all relevant times herein, there existed within the State Bar of California

22  as promulgated by the BOARD OF GOVERNORS OF THE STATE BAR OF

23  CALIFORNIA, a pattern, policy, practice, tradition, custom, and usage of conduct of

24  restraining the free speech of and enacting impermissible prior restraints on attorneys

25  practicing law in California on matters of public concern, which resulted in a deliberate

26  indifference to Plaintiffs' rights to free speech.

27       83.    The acts set forth herein constitute a policy, practice, or custom of ordering,

28  ignoring, encouraging, causing, tolerating, sanctioning, and/or acquiescing in the

1  violation by STATE BAR personnel of the constitutional rights to free speech of

2  attorneys practicing law in California on matters of public concern.

3       84.    The acts and failures to act as alleged herein also result from a custom,

4  practice or policy of inadequate training in a deliberate indifference to the rights of

5  attorneys practicing law in California who speak out on matters of public concern, and

6  the injuries suffered by plaintiff as alleged herein were caused by such inadequate

7  training.

8       85.    Defendants, and each of them, exhibited deliberate indifference to the

9  violation of Plaintiff's protected speech rights by failing to investigate their complaints

10  or provide them with protection from unlawful conduct.

11      86.    Defendant FUJIE and Does 1-50 are policymakers for defendant STATE

12  BAR. The acts and failures to act as alleged herein were done pursuant to policies and

13  practices instituted by these defendants pursuant to their authority as policymakers for

14  the City.

15      87.    As a result of the acts and failures to act as alleged herein, and as a result of

16  the STATE BAR's customs, traditions, usages, patterns, practices, and policies, Plaintiffs

17  were deprived of their constitutional rights to free speech, and suffered damages caused

18  thereby as more particularly alleged above.

19      88.    Unless and until defendants' unlawful policies and practices as alleged

20  herein are enjoined and restrained by order of this Court, defendants will continue to

21  cause great and irreparable injury to Plaintiffs.

## THIRD CAUSE OF ACTION
## VIOLATION OF 42 U.S.C. § 1983 (SUBSTANTIVE DUE PROCESS)
### (Plaintiffs Against All Defendants, Including Fujie, Armendariz, Drexel, Blumenthal, and Dal Cerro)

26      89.    The allegations set forth in foregoing paragraphs of this Complaint are

27  realleged and incorporated by reference as if fully set forth herein.

28      90.    In perpetrating the above described acts and omissions, defendant STATE

COMPLAINT FOR DECL. & INJUNC RELIEF

1   BAR OF CALIFORNIA was, at all relevant times herein, a governmental agency of the

2   State of California, and defendants ARMENDARIZ, DREXEL, BLUMENTHAL, and

3   DAL CERRO were, at all relevant times herein, its agents/employees.  Thus, defendants'

4   above-described acts and omissions constitute cognizable state action under color of

5   state law.

6       91.    In perpetrating the above-described acts and failures to act, the defendants,

7   and each of them, engaged in a pattern, practice, policy, tradition and/or custom of

8   depriving Plaintiffs KAY and DALTON of their right to practice law without undue and

9   unreasonable government interference in violation of the Fourteenth Amendment to the

10  United States Constitution.  Because rights under the federal Constitution are federally

11  protected, defendants also violated Plaintiffs' rights under 42 U.S.C. § 1983.

12      92.    At all relevant times herein, there existed within the State Bar of California

13  as promulgated by the BOARD OF GOVERNORS OF THE STATE BAR OF

14  CALIFORNIA, a pattern, policy, practice, tradition, custom, and usage of conduct of

15  depriving Plaintiffs licensed to practice law in the State of California of their right to

16  practice their profession without undue and unreasonable government interference in

17  violation of the Fourteenth Amendment to the United States Constitution, which resulted

18  in deliberate indifference to Plaintiffs' right to practice their profession.

19      93.    The acts set forth herein constitute a policy, practice, or custom of ordering,

20  ignoring, encouraging, causing, tolerating, sanctioning, and/or acquiescing in the

21  violation by STATE BAR personnel of the constitutional rights of attorneys licensed to

22  practice law in the State of California to practice law without undue and unreasonable

23  government interference.

24      94.    The acts and failures to act as alleged herein also result from a custom,

25  practice or policy of inadequate training in a deliberate indifference to the rights of

26  attorneys licensed to practice law in the State of California to practice law without undue

27  and unreasonable government interference, and the injuries suffered by Plaintiff KAY

28  and DALTON as alleged herein were caused by such inadequate training.

95.     In perpetrating the above-described acts and failures to act, the defendants, and each of them, also engaged in a pattern, practice, policy, tradition and/or custom of depriving MARCISZ, B. POLLASTRINI, and J. POLLASTRINI of their right of access to the courts, which necessarily includes the right to be represented by the attorneys of their choice, in violation of the Fourteenth Amendment to the United States Constitution. Because rights under the federal Constitution are federally protected, defendants also violated Plaintiffs' rights under 42 U.S.C. § 1983.

96.     At all relevant times herein, there existed within the State Bar of California as promulgated by the BOARD OF GOVERNORS OF THE STATE BAR OF CALIFORNIA, a pattern, policy, practice, tradition, custom, and usage of conduct of depriving litigants of their right of access to the courts, which necessarily includes the right to be represented by the attorneys of their choice, which has resulted in a deliberate indifference to Plaintiffs' right of access to the courts.

97.     The acts set forth herein constitute a policy, practice, or custom of ordering, ignoring, encouraging, causing, tolerating, sanctioning, and/or acquiescing in the violation by STATE BAR personnel of the constitutional rights of litigants of access to the courts, which necessarily includes the right to be represented by the attorneys of their choice.

98.     The acts and failures to act as alleged herein also result from a custom, practice or policy of inadequate training in a deliberate indifference to the rights of litigants, and the injuries suffered by Plaintiffs MARCISZ, B. POLLASTRINI, and J. POLLASTRINI as alleged herein were caused by such inadequate training.

99.     Defendants, and each of them, exhibited deliberate indifference to the violation of Plaintiffs' protected due process rights by failing to investigate their complaints or provide them with protection from unlawful conduct.

100.    Defendant FUJIE and Does 1-50 are policymakers for defendant STATE BAR. The acts and failures to act as alleged herein were done pursuant to policies and practices instituted by these defendants pursuant to their authority as policymakers for

24

COMPLAINT FOR DECL. & INJUNG RELIEF

1 | the City.

2 | 101.   As a result of the acts and failures to act as alleged herein, and as a result of

3 | the STATE BAR's customs, traditions, usages, patterns, practices, and policies, Plaintiffs

4 | were deprived of their constitutional rights to due process and suffered damages caused

5 | thereby as more particularly alleged above.

6 | 102.   Unless and until defendants' unlawful policies and practices as alleged

7 | herein are enjoined and restrained by order of this Court, defendants will continue to

8 | cause great and irreparable injury to Plaintiffs.

9 | **FOURTH CAUSE OF ACTION**

10 | **VIOLATION OF 42 U.S.C. § 1983 (EQUAL PROTECTION)**

11 | **(Plaintiffs Kay and Dalton Against All Defendants, Including Fujie, Armendariz,**

12 | **Drexel, Blumenthal, and Dal Cerro, in Their Individual and Official Capacities)**

13 | 103.   The allegations set forth in foregoing paragraphs of this Complaint are

14 | realleged and incorporated by reference as if fully set forth herein.

15 | 104.   In perpetrating the above described acts and omissions, defendant STATE

16 | BAR OF CALIFORNIA was, at all relevant times herein, a governmental agency of the

17 | State of California, and defendants ARMENDARIZ, DREXEL, BLUMENTHAL, and

18 | DAL CERRO were, at all relevant times herein, its agents/employees.  Thus, defendants'

19 | above-described acts and omissions constitute cognizable state action under color of

20 | state law.

21 | 105.   In perpetrating the above-described acts and failures to act, the defendants,

22 | and each of them, engaged in a pattern, practice, policy, tradition and/or custom of

23 | unlawful selective prosecution of solo practitioners who represent and advance the

24 | individual rights of plaintiffs in lawsuits in violation of the Equal Protection Clause of

25 | the Fourteenth Amendment to the United States Constitution.  Because rights under the

26 | federal are federally protected, defendants also violated Plaintiffs' rights under 42 U.S.C.

27 | § 1983.

28 | 106.   At all relevant times herein, there existed within the State Bar of California

COMPLAINT FOR DECL. & INJUNC RELIEF

1  as promulgated by the BOARD OF GOVERNORS OF THE STATE BAR OF
2  CALIFORNIA, a pattern, policy, practice, tradition, custom, and usage of conduct of
3  unlawful selective prosecution of civil laws against solo practitioner plaintiffs' lawyers,
4  which resulted in a deliberate indifference to Plaintiffs' constitutional rights.
5       107.   In perpetrating the above-described acts and failures to act, the defendants,
6  and each of them, knowingly engaged in a pattern, practice, policy, tradition and/or
7  custom of unlawful selective prosecution of civil laws against solo practitioner plaintiffs'
8  lawyers in violation of the Equal Protection Clause of the Fourteenth Amendment to the
9  United States Constitution.  Because rights under the federal and state Constitutions are
10  federally protected, defendants also violated Plaintiffs' rights under 42 U.S.C. § 1983.
11       108.   The acts set forth herein constitute a policy, practice, or custom of ordering,
12  ignoring, encouraging, causing, tolerating, sanctioning, and/or acquiescing in the
13  violation by STATE BAR personnel of Plaintiffs' constitutional rights as solo
14  practitioner plaintiffs' lawyers.
15       109.   The acts and failures to act as alleged herein also result from a custom,
16  practice or policy of inadequate training in a deliberate indifference to Plaintiffs'
17  constitutional rights as solo practitioner plaintiffs' lawyers, and the injuries suffered by
18  plaintiff as alleged herein were caused by such inadequate training.
19       110.   Defendants, and each of them, exhibited deliberate indifference to the
20  violation of Plaintiff's protected rights by failing to investigate their complaints and
21  provide them with protection from unlawful conduct.
22       111.   Defendant FUJIE and Does 1-50 are policymakers for defendant STATE
23  BAR.  The acts and failures to act as alleged herein were done pursuant to policies and
24  practices instituted by these defendants pursuant to their authority as policymakers for
25  the City.
26       112.   As a result of the acts and failures to act as alleged herein, and as a result of
27  the STATE BAR's customs, traditions, usages, patterns, practices, and policies, Plaintiffs
28  were deprived of their constitutional equal protection rights and suffered damages

26

COMPLAINT FOR DECL & INJUNC RELIEF

1    caused thereby as more particularly alleged above.

2         113.   Unless and until defendants' unlawful policies and practices as alleged

3    herein are enjoined and restrained by order of this Court, defendants will continue to

4    cause great and irreparable injury to Plaintiffs.

5                         **FIFTH CAUSE OF ACTION**

6                **INJUNCTIVE AND DECLARATORY RELIEF**

7                  **(All Plaintiffs Against All Defendants)**

8         114.   The allegations set forth in the foregoing paragraphs of this Complaint are

9    realleged and incorporated by reference as if fully set forth herein.

10        115.   As a result of Defendants' conduct, Plaintiffs have been injured, and in the

11   absence of injunctive relief, will be irreparably harmed.  Plaintiffs have no adequate

12   remedy at law.  Plaintiffs, therefore, seek injunctive relief under the laws of equity to

13   remedy their injuries and prevent any future injury to their persons.

14        116.   There is an actual controversy between all Plaintiffs and Defendants, and

15   Plaintiffs seek a declaration of their rights to be free of unlawful acts by Defendants, and

16   each of them.

17   / / /

18   / / /

19   / / /

20

21

22

23

24

25

26

27

28

COMPLAINT FOR DECL & INJUNC RELIEF

## VI.  <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiffs respectfully request the Court to:

(a)    enter judgment in favor of Plaintiffs on all counts of the Complaint;

(b)    award injunctive relief by issuing a temporary restraining order, and preliminary and permanent injunctions restraining Defendants, and each of them, from infringing on Plaintiffs' constitutional rights to due process, free speech, and equal protection;

(c)    declare Defendants' actions unconstitutional;

(d)    award Plaintiffs the costs of suit including reasonable attorneys' fees; and

(e)    award Plaintiffs such other and further relief as the Court deems just
       under the circumstances.

DATED:  March 16, 2009                  Respectfully submitted,

                                        HADSELL, STORMER, KEENY,
                                        RICHARDSON & RENICK, LLP


                                        By _____
                                            Dan Stormer
                                        Attorneys for All Plaintiffs

28

COMPLAINT FOR DECL. & INJUNC. RELIEF